# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin



**CLERK'S OFFICE**
**A TRUE COPY**
Mar 18, 2022
s/ DarylOlszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

| In the Matter of the Search of | ) | |
|---|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) ) | Case No.  22  MJ  45 |
| A Samsung Galaxy S9 Cellphone, ATF Evidence #55 ("the Device") | ) ) | **Matter No.: 2021R00258** |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A. Over which the Court has jurisdiction pursuant to 18 U.S.C. §§ 2703 and 2711 and Federal Rule of Criminal Procedure 41.

located in the _____ District of _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, U.S.C., Section 842(a)(1); Title 26, U.S.C., Section 5861 | Manufacturing and dealing explosives without a license; possession or making a destructive device without appropriate registration |

The application is based on these facts:

See the attached affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

ATF SA Jody Keeku
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone *(specify reliable electronic means)*.

Date: 3/18/2022

*Judge's signature*

City and state: Milwaukee, WI

Hon. William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Jody Keeku, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the search of property, a cellular telephone, which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent of the United States Justice Department, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), currently assigned to the Milwaukee Field Office. I have been so employed since July 2001. My duties as a Special Agent with ATF include investigating alleged violations of the federal firearms, explosives, and arson statutes.

3. I have completed approximately 26 weeks of training at the Federal Law Enforcement Training Center (Glynco, Georgia), as well as the ATF National Academy. That training included various legal courses related to Constitutional Law as well as search and seizure authority. Additionally, I have received training on how to conduct various tasks associated with criminal investigations, such as: interviewing, surveillance, and evidence collection.

4. In addition to my duties as a criminal investigator, I am also an ATF Certified Explosive Specialist Bomb Technician (CESBT). As a CESBT I conduct investigations in the Chicago Field Division and other ATF Jurisdictions as assigned, provide technical assistance to state/local bomb squads and other ATF agents in the investigation of explosions; provide safe disposal of recovered, purchased, seized or forfeited explosive materials; and provide explosive

2

diagnostic capabilities at special events. I have participated in the scene examination and post-blast investigation of over ten explosive related activities. I have coordinated, instructed and participated in over ten live explosive training scenarios for post blast investigation training. I have also participated as an assistant instructor at the Advanced Explosive Disposal Techniques course and I have conducted or participated in several explosive disposal operations. As a Bomb Technician, I am responsible for conducting investigations, render safe, disassembly, and/or disposal of suspected hazardous device(s), explosives, explosive materials, pyrotechnics and ammunition. Responsibilities also include coordination with other local, state, and federal partners to investigate, perform diagnostics and potential render safe operations in chemical, biological, radiological, nuclear, and explosive (CBRNE) events. I conduct bombing crime scene investigations, collect and preserve evidence, and prepare and provide courtroom testimony. I maintain issued bomb squad equipment, provide technical support to special operations, and provide dignitary protection. I have prepared and participated in explosive related training, and am familiar with technical and intelligence publications, the federal explosives laws and regulations and other explosive related materials. I maintain professional training and liaison with other public safety bomb squads, explosive detection canine units, special weapons and tactics (SWAT) units, military EOD units, federal agencies and professional associations such as IABTI and IAAI. I report investigative and technical data on explosives related incidents and activities to the Bomb and Arson Tracking System (BATS).

5. I have previously applied for and received search and arrest warrants related to the crime of arson and crimes involving explosives, as well as other crimes.

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is

3

intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7. Based on my training and experience and the facts, as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 842(a)(1), and 26 U.S.C. § 5861(d) (collectively, the "Subject Offenses") have been committed by William Libby III. There is also probable cause to search the information described in Attachment A for evidence of these crimes, as described in Attachment B.

## DEFINITIONS

8. The following definitions apply to the Affidavit and Attachment B of this Affidavit:

    a. "Cellular telephone" or "cell phone" means a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books"; sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and

3

accessing and downloading information from the Internet. Wireless telephones may include geolocation information indicating where the cell phone was at particular times.

b. The terms "records," "documents," and "materials" include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including writings and drawings), photographic form (including prints, negatives, videotapes, motion pictures, and photocopies), mechanical form (including printing and typing) or electrical, electronic or magnetic form (including tape recordings, compact discs, electronic or magnetic storage devices such as hard disks, CD-ROMs, digital video disks ("DVDs"), Personal Digital Assistants ("PDAs"), Multi Media Cards ("MMCs"), memory sticks, smart cards, or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

c. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This

storage media can contain any digital data, including data unrelated to photographs or videos.

d. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

e. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS

5

Case 2:22-mj-00045-WED    Filed 03/18/22    Page 6 of 20    Document 1

antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

    f.  PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

    g.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic

6

sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

h. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

i. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

## IDENTIFICATION OF THE DEVICE TO BE EXMAMINED

9. The property to be searched is a Samsung Galaxy S9, ATF Property Exhibit Number #55, currently stored in the ATF Milwaukee I Evidence Vault ("the Device").

## PROBABLE CAUSE

10. At 12:20 AM on 07/05/2021, the occupants of a silver 2007 Ford 500 four-door threw an Improvised Explosive Device (IED) at two Milwaukee Police Officers. The officers were in full uniform and were standing next to their marked Milwaukee Police Department squad car at 1213 N. Water St, in the City and County of Milwaukee. This device exploded, causing the airbags of the squad car to deploy and the two officers to become disoriented. The two officers were transported to the hospital and were treated for concussion-like symptoms. Both officers are still experiencing serious medical issues related to this attack; neither has been able to return to work.

11. The Milwaukee Police Department conducted an open-source search and located a public post on www.Facebook.com, regarding the explosives-related injuries suffered by the two MPD Officers. A public comment was created under this post by a subject with the profile name of "Derek Smith". This profile "tagged" or referenced the names of two other profiles; "Javier Thompson" and "Gerrell Bufford", followed by a laughing emoji.

12. Other Milwaukee Police Officers working in the area obtained the license plate from the sedan the IED was thrown from. The Wisconsin license plate, 14125GT, listed to Derek M. Smith, B/M 03/15/2002. Smith was eventually arrested and confessed to throwing various IED's out of his car on Water Street the evening of July 4, 2021, along with two friends. Smith identified his co-actors as Javier D. Thompson, B/M 05/15/2002, and Gerrell NMN Bufford, B/M, 02/10/2001.

13. Smith gave law enforcement consent to look through his cell phone. On Smith's phone, law enforcement observed a video of a subject holding, lighting, and throwing a white PVC Pipe Bomb near the street at 2414 W. Fond du Lac Ave. on the night of July 4,

2021. This pipe bomb exploded near the street.

14. Smith stated he didn't know who this subject from the video was, specifically, but claimed the subject was related to Bufford. This subject was a black male, 20's with a thin build, slight moustache and chin hair, with tattoos on his arms. This subject was wearing a white tank top, with New York and the number 30 written on the chest.

15. On July 6, 2021, Milwaukee Police Officers went to the address of 2473 W. Walnut St, located in the City and County of Milwaukee. At this residence, Bufford was arrested. Also at this residence was Lawrence T. Turner, B/M, 02/08/1994, who was the half-brother of Bufford. Turner was the subject in the video lighting and throwing the pipe bomb at 2414 W. Fond du Lac Ave.

16. Bufford confessed he was driving around with Smith and Thompson on the morning of July 5, 2021, and acknowledged they were throwing fireworks out of the car.

17. Turner was arrested and confessed to possessing and lighting the pipe bomb from the video on Smith's phone. Turner stated he bought the pipe bomb from an individual who he could call and have deliver more. Turner provided the cell phone number of 414-252-8898 for the subject he called to purchase the pipe bomb from and said the suspect drove a beat-up white pickup truck.

18. On the evening of July 6, 2021, Turner called 414-252-8898 and requested to buy two pipe bombs. Turner arranged to meet the pipe bomb dealer in Washington Park at 1857 N. 40th St.

19. At approximately 9:50 PM that evening, the suspect pulled into Washington Park in an older model white pickup truck. This subject was taken into custody and identified as Demetrius A. Powell (B/M, 02/16/1966).

20. Located on the passenger side floorboard, in plain view, was a pipe bomb made of PVC, four M-1000's and ninety M-80's. All of these items were X-rayed and contained powder inside of them.

21. Powell stated he had been buying fireworks and explosives from an individual that goes by "Bill", whose phone number is 414-899-0231. The phone number listed back to William Libby III (W/M, DOB 09/22/1976) ("LIBBY III"). Powell also identified LIBBY III as "Bill" using a photo lineup.

22. A consensual search of Powell's phone revealed text messages between Powell and LIBBY III regarding the manufacture and sale of explosives. A sample of these messages follows; these messages may have been modified slightly for clarity:

- Friday, June 18, 2021:

    - LIBBY III at 10:51 AM CST: "The address is 7100 38th Ct. with the handicap ramp"

    - LIBBY III at 4:47 PM CST: "My powder came today and I made three 6 pounders and one 7 pounder the 6 pounders are $175 and the 7 pounder is $200"

- Saturday, June 26th, 2021:

    - LIBBY III at 9:50 AM CST: "Did you still want the go cart and those big fireworks because I have some people that are interested in them but I'm giving you first grab at them"

    - LIBBY III at 2:23 PM CST: "Are you coming today"

- Friday, July 2, 2021:

- o   LIBBY III at 9:16 AM CST: "I am off work today call me"

- Saturday, July 4, 2021:

    - o   LIBBY III at 5:00 PM CST: "Just so you know I have lots of fireworks left"

    - o   Powell at 6:19 PM CST: "Ok"

    - o   LIBBY III at 9:56 PM CST: "I'm here"

    - o   LIBBY III at 10:22 PM CST: "The add is 5133 N 38th st"

23.     Powell stated that he purchased explosives from LIBBY III near the area of 38th and Lancaster/Villard on a dead-end street. He also described purchasing explosives at a nearby home, located at 5133 N 38th St.

24.     Powell stated he doesn't make these devices; he just sells them as a middleman to make money. Powell stated: "Fireworks is just like drugs you know what I'm saying. Middleman selling them, I made a few dollars off the motherfuckers." Powell confirmed he was going to sell the explosives in his possession to the guy who set him up. Powell stated the "M-80's" are $10, the "sticks" are $30 and the "two pounder" is $50.

25.     A search warrant was executed at Powell's residence located at 4657 N. 36th St, Apt. 1 Milwaukee, WI. Located at the residence was a clear plastic zip lock bag that contained several improvised explosive devices commonly referred to as M-80's. This bag of M-80's was photographed and recovered. An X-ray of these devices was taken and showed they contained an unknown type of powder.

26.     On July 7, 2021, a search warrant was executed at 5133 N 38th St. Milwaukee, WI, the residence that Powell met LIBBY III at to purchase the explosives. The residence belongs to LIBBY III's brother John J. Libby (W/M, DOB 9/18/1979), along with his

girlfriend Sarah Cupertino (W/F, DOB 01/04/1992). Items located at the residence were 47 improvised explosive devices commonly referred to as M-80's. These devices were inside a "Great Value" brand plastic zip lock bag. This bag was labeled "M80" and with the number "100". The M-80's seized from the search warrant at 5133 N. 38th St. were similar to the M-80's seized from a vehicle driven by Powell on July 6, 2021. They were also similar to the bag of M-80's recovered from inside Powell's apartment at 4657 N. 36th St. #1.

27. During the search warrant John Libby was interviewed by law enforcement and stated that his brother LIBBY III brought over bags of "M-80" type devices to John Libby's residence. LIBBY III told John Libby that he generated a post on Facebook that he was selling his "Fun Sticks," which John Libby knew to be fireworks and M-80's.

28. On July 8, 2021, a search warrant was executed at the residence of LIBBY III, 6216 W. Boehlke Ave. Milwaukee, WI. An individual later identified as James Gaines (B/M, DOB 8/13/1978) was present at the residence. Gaines stated he was at the residence picking up some of his belongings. Items found at the residence were latex gloves, glue gun, LIBBY III's driver's license, and a white piece of paper with a note identifying an email of loudbang187@gmail.com, with a password of "Firework123" handwritten on it.

29. Officers also found a cardboard box with a shipping label from CannonFuse LLC, containing a packing slip from a company using the URL "CannonFuse.com". This packing slip listed the following items were shipped to LIBBY III at 6216 W. Boehlke Ave. and are used in the manufacture of "M" type devices: Cannon Fuse (quantity of 4), Tube, 9/16" x 1.5" x 1/16" (500 pcs), Red Plastic Plugs, 9/16" (1000 pcs), Hot Glue Sticks Tube, 1" x 2.5" x 3/32" (quantity of 4), Red Plastic Plugs, 1" (quantity of 5) Tube, 1" x 6" x 3/8" (quantity of 5).

30. On Tuesday, July 13, 2021, LIBBY III was arrested at S84W18759 Enterprise Dr. in the City of Muskego, WI, the location of a business called Specialty Machine Products. LIBBY III was employed by this business.

31. Nicholas Zmudzinski is the owner of Specialty Machine Products. Zmudzinski stated that LIBBY III had worked for him off and on for the past ten years. LIBBY III's father -- William Libby, Jr. (M/W, 03/31/54) ("LIBBY JR") -- also worked for him part time. Zmudzinski was aware why LIBBY III was arrested and explained that last year LIBBY III gave him what was referred to as a "1/4 stick," described as being approximately 3/4" x 2" in size with a fuse. Zmudzinski said after he lit the fuse, there was a loud explosion when the "1/4 stick" blew up. Zmudzinski stated LIBBY JR. also told him he was selling the "1/4 sticks"; however, Zmudzinski did not buy any of them from LIBBY JR.

32. A query of ATF Explosive Licensing Database revealed that neither LIBBY JR. nor LIBBY III have a license to possess, manufacture, or sell explosives nor have they ever applied for one.

33. Law enforcement received records from CannonFuse LLC regarding its dealings with LIBBY JR. and LIBBY III, pursuant to lawful legal process. According to those records, LIBBY III made purchases from CannonFuse LLC dating back to July 30, 2018, with the most recent purchase on June 26, 2021.

34. LIBBY III used his current home address of 6216 West Boehlke Avenue in the City of Milwaukee as the shipping address on all of his orders, which was where the state residential search warrant was executed and was still the current address of Libby in July of 2021.

35. LIBBY III used the email address of williamlibbyiii@yahoo.com on all of his

13

orders with CannonFuse LLC.

36. LIBBY JR. had purchases dating back to July 5, 2018, with his most recent purchase coming June 27, 2021. LIBBY JR used his current home address of 7100 N 38th Court in the City of Milwaukee as the shipping address on his orders.

37. LIBBY JR. used the email address of shellylibby1@yahoo.com for his orders. LIBBY JR's name was on all of his invoices with this email address.

38. Both LIBBY JR. and LIBBY III purchased large quantities of items known by law enforcement to be used in the manufacture of improvised explosive devices from CannonFuse LLC, including fuse, tubes, plugs, hot glue, and a hot glue gun.

39. LIBBY III was charged with knowingly engaging in the business of manufacturing and dealing in explosive materials without a license on February 1, 2022. *See United States v. Bufford, et al.*, 2:22-cr-00032 (E.D. Wis.). A warrant was issued for his arrest at that time.

40. On March 10, 2022, LIBBY III was taken into custody by the U.S. Marshals Service based on a federal arrest warrant. Libby III was escorted to the U.S. Marshals Service located in the Eastern District of Wisconsin. Located on Libby III's person was the Device, which was taken into ATF custody and retained as evidence.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

41. Based on my training and experience, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device. Furthermore, I know that cellphones can store information for long periods of time.

Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

42. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described in the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data

stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

43. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Device to human inspection in order to determine whether it is evidence described by the warrant.

44. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution at any time in the day or night.

# ATTACHMENT A

**Property to Be Searched**

1. The property to be searched is a Samsung Galaxy S9 Cellphone, ATF Evidence #55 ("the Device").

2. The Device is currently stored at ATF Milwaukee I Vault. This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

# ATTACHMENT B

## Particular Things to be Seized

1. All records, information, and items on the Device described in Attachment A related to violations of 18 U.S.C. § 842(a)(1), and 26 U.S.C. § 5861(d) (collectively, the "Subject Offenses") related to William Libby III, to include:

   a. any information related to possession, manufacture, and sale of explosives (including photographs, text messages, emails, or any other communication information);

   b. any information related to sources of explosives and manufacturing material (including names, addresses, phone numbers, or any other identifying information);

   c. GPS information and any other location service data from the phone and/or from any downloaded applications;

   d. Internet search history and browser history related to explosives and explosive related material or location searches;

   e. Call history;

   f. Contact list, to include names, addresses, phone numbers, and/or email addresses;

   g. Any video and/or photograph(s) on the phone related to the sale, manufacture, possession and use of explosives; and

   h. Any text messages exchanged or drafted that seem to relate to the sale, manufacture, possession, and use of explosives;

   i. lists of customers and related identifying information;

j. types, amounts, and prices of sale of explosives as well as dates, places, and amounts of specific transactions;

k. any information recording Libby III's schedule or travel;

l. all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of electronic storage and any photographic form.